# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORABETH D., | |
| Plaintiff, | |
| v. | No. 1:21-cv-12874 |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | **OPINION** |
| Defendant. | |

**APPEARANCES**:

Alan H. Polonsky
POLONSKY & POLONSKY
512 S. White Horse Pike
Audubon, NJ 08106

   *On behalf of Plaintiff.*

Philip R. Sellinger
United States Attorney
U.S. DEPARTMENT OF JUSTICE
   OFFICE OF THE U.S. ATTORNEY
401 Market Street
P.O. Box 2098
Camden, NJ 08101

Diana Jan Lin
SOCIAL SECURITY ADMINISTRATION
   OFFICE OF THE REGIONAL CHIEF COUNSEL
300 Spring Garden Street, Sixth Floor
Philadelphia, PA 19123

   *On behalf of Defendant.*

**O'HEARN, District Judge.**

## INTRODUCTION

This matter comes before the Court on Plaintiff Norabeth D.'s[1] ("Plaintiff") Appeal from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Defendant"). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court **AFFIRMS** the Acting Commissioner's decision.

### I.   BACKGROUND

The Court recites herein only those facts necessary for its determination on this Appeal.

#### A.  Administrative History

On September 26, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning February 1, 2011. (R. 2008). The claim was denied initially on February 7, 2014, and upon reconsideration on May 15, 2014. (R. 2008). Thereafter, Plaintiff filed a written request for a hearing on May 19, 2014. (R. 2008). She appeared and testified at a hearing held on August 29, 2016, in Pennsauken, New Jersey, which resulted in an affirmation of the earlier unfavorable determination. (R. 2008). Plaintiff requested that the Appeals Council review the case, which it did, remanding for further review on November 29, 2017. (R. 2008). The case then went before Administrative Law Judge Karen Shelton ("ALJ"). (R. 2008).

The ALJ issued a decision on February 19, 2019, again rendering an unfavorable determination. (R. 2008) Plaintiff appealed the decision to the Appeals Council, which affirmed the ALJ's decision on August 6, 2019. (R. 2008) Plaintiff then appealed the Appeals Council denial

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

to this Court, which reversed and remanded the matter for further proceedings related to the consideration of the opinions of Andro Zangaladze, M.D. and Carrie Kern, D.O. (R. 2104–24). This Court held that a remand was warranted because the ALJ neither provided valid reasons for rejecting the doctors' opinions nor recontacted the doctors for clarification. (R. 2122, 2124).

Following remand, on February 2, 2021, the ALJ held a telephone hearing due to the extraordinary circumstances presented by the COVID-19 global pandemic. After the hearing, the ALJ again found that Plaintiff was not disabled in a decision dated April 21, 2021. (R. 2020). Plaintiff now appeals that decision.

### B.  Plaintiff's Background and Testimony

Plaintiff initially filed for disability insurance benefits on September 26, 2013, with an alleged period of disability beginning on February 1, 2011. (R. 157–58). The disabilities were based on brain damage, seizures, and right-side weakness. (R. 171–72). The initial onset date was later amended to May 16, 2012. (R. 145).

Plaintiff was thirty-three-years old on her alleged disability onset date and thirty-nine-years old as of her date last insured. (R. 157, 171). She has received high school and vocational school education and has prior experience as a cardiac technician, nurse assistant, and medical assistant. (R. 51, 148–49). She was capable of taking on numerous household chores. (R. 61, 397, 398, 399, 574, 1458).

Plaintiff testified that she was unable to work for the past ten years after a car accident. (R. 2048–66). Among other things, Plaintiff claimed that she has panic disorder and PTSD, that she is hyper-vigilant and needs to know that there is a place to escape, and that she is unable to tolerate bright lights due to a vision problem known as lateral rectus palsy. (R. 2048). Plaintiff also claimed that she experiences seizures, which appear to be related to stress. (R. 2049–50). Plaintiff

explained that she experiences seizures that make her body shake and vision blurry, describing them as "like an out of body experience." (R. 2051). However, her CT scan and MRIs were normal, neurological examinations were stable, and her EEG did not show any evidence of seizures. (R. 489, 495).

    **C.  Medical History**

On February 1, 2016, Plaintiff began treatment with Andro Zangaladze, M.D., Ph.D., who is board-certified in neurology and clinical neurophysiology by the American Board of Psychiatry and Neurology. (R. 2016–17; Pla.'s Reply, ECF No. 16 at 7).[2] Dr. Zangaladze examined Plaintiff twice: in January 2016, (R. 796), and in July 2016, (R. 1362). For both examinations, Plaintiff's tests were normal. (R. 795, 1362). Dr. Zangaladze therefore concluded on the first visit that Plaintiff may have non-epileptic seizures, (R. 795), and on the second visit that Plaintiff may have pseudoseizures. (R. 1362). Based on these examinations, Dr. Zangaladze completed a Seizures Residual Functional Capacity Questionnaire, (R. 1393), and noted that Plaintiff would have one to two pseudoseizures or possible focal seizures per month, lasting around ten minutes each time, (R. 1393). Dr. Zangaladze also noted that Plaintiff should not work at heights or with power machines and should not drive or take a bus alone. (R. 1395). Based on the examinations, Dr. Zangaladze concluded that Plaintiff would not be able to work low-stress jobs and would be absent from work more than four times a month. (R. 1396).

---

    [2]  The ALJ acknowledged that Dr. Zangaladze's area of practice is neurology and neurophysiology. (R. 2016–17). It is not clear to the Court whether there is evidence in the record as to Dr. Zangazalde's certification by the American Board of Psychiatry and Neurology, but the Court can take judicial notice of an indisputably accurate fact. FED. R. EVID. 201(b). As Dr. Zangazalde's certification is readily confirmed by a search using the Board's "verifyCERT" tool, the Court takes such notice. *Zangaladze, Andro*, AMERICAN BD. OF PSYCHIATRY & NEUROLOGY: VERIFYCERT (July 22, 2022, 5:00 PM), https://apps.abpn.com/verifycert/?lastName=zangaladze.

In March 2018, approximately two years after the Plaintiff's date-last-insured, Samuel Sarmiento, M.D., conducted a comprehensive internal medicine consultative evaluation on Plaintiff. (R. 1472). As noted by Plaintiff, (Pla.'s Br., ECF No. 12 at 20), Dr. Sarmiento discovered certain physical limitations pertinent to Plaintiff's conditions: for example, Plaintiff could only carry up to ten pounds but no heavier, (R. 1480); she could only sit or stand for ten to fifteen minutes, (R. 1481); and she could only walk for 45 minutes, (R. 1481). Notwithstanding these findings, however, Dr. Sarmiento concluded that Plaintiff would be able to walk, sit, and stand with reasonable breaks. (R. 1476). The consultative evaluation report did not specify whether the diagnosis was relevant to Plaintiff's medical condition prior to her date-last insured.

In April 2018, a month after Dr. Sarmiento's consultative examination, Juan Cornejo, D.O., performed an orthopedic consultative examination on Plaintiff. (R. 2018). Dr. Cornejo noted several limitations applicable to Plaintiff's condition: for example, Plaintiff would have difficulty with prolonged walking and standing, would need to take breaks after sitting for a reasonable amount of time, and would be limited from "physically exerting activity." (R. 1460). Dr. Cornejo also noted that Plaintiff stated herself that she had neck and back pain since 2012. (R. 1457). However, he pointed out that Plaintiff would be capable of sedentary work with breaks and is capable of possible occasional light lifting. (R. 1460). Dr. Cornejo also reviewed an MRI of Plaintiff's neck from February 2017 showing "minimal anterolisthesis, central disc protrusion, as well as bulging." (R. 1457). Similar to Dr. Sarmiento's medical report, Dr. Cornejo's report also makes no mention of whether the present diagnosis is applicable to Plaintiff's condition before her date-last-insured.

In addition to these examinations, Plaintiff's primary care physician, Carrie Kern, M.D., wrote three "To Whom It May Concern" letters dated November 2018, July 2020, and November

5

2020, respectively. (R. 1680, 3138, 3984). In her November 2018 letter, Dr. Kern indicated that she believed that Plaintiff could not "work 8 hour shifts, five days per week." (R. 1680). She explained that Plaintiff suffers from seizures or pseudoseizures, is not permitted to drive, cannot work with machinery, and is unable to sit at a computer for prolonged periods. (R. 1680). In her July 2020 letter—a mere five sentences—Dr. Kern noted that "[Plaintiff] is currently not working due to a disability that precludes her from working." (R. 3158). In her November 2020 letter, Dr. Kern noted that Plaintiff was then undergoing treatment for "Panic disorder with agoraphobia and unspecified Major Depressive Disorder as well as Seizure disorder (possibly non-epileptic)." (R. 3984). However, in the same report, Dr. Kern noted that Plaintiff's MRI scans of the brain and EEGs were both normal. (R. 3984). Dr. Kern did not mention in any of her letters whether the diagnoses were applicable to the time period before the date-last-insured.

On November 17, 2020, Cori-Ann Feiner-Escoto, Psy.D., also wrote a "To Whom It May Concern" letter. (R. 3983). In the letter, Dr. Feiner-Escoto noted that she has seen Plaintiff for individual therapy sessions since September 2017. (R. 3983). Dr. Feiner-Escoto further noted that "[Plaintiff] carries diagnoses of panic disorder with agoraphobia and major depressive order" and that her "mental health issues contribute to the difficulties she would have obtaining and maintaining employment." (R. 3983).

### D. Vocational Expert Testimony

During the January 2019 hearing, the ALJ posed a hypothetical question to the vocational expert ("VE"). (R. 149–51). The hypothetical assumed an individual with Plaintiff's vocational profile and Residual Functional Capacity ("RFC"). (R. 149–51). The question was what range of sedentary work was available to Plaintiff that involved no exposure to unprotected heights, hazardous machinery, or ladders, ropes, or scaffolds; occasional balancing and stair climbing;

frequent stooping, kneeling, crouching, and crawling; frequent handling and fingering; and only simple, routine tasks in a work environment with few changes and breaks every two hours. (R. 149–51). The VE testified that Plaintiff could work as an Addresser, Call Out Operator, and Telephone Quotation Clerk. (R. 151).

At the most recent hearing in February 2021, (R. 2036), the ALJ noted to Plaintiff's counsel that since there was already "hypothetical testimony on a sedentary" from the prior case, she did not need VE testimony if she wanted to use "a less than sedentary" hypothetical. (R. 2066). The ALJ then proceeded to ask Plaintiff's counsel whether he had any questions, and Plaintiff's counsel responded by only asking a question about work absences. (R. 2067).

**E. The ALJ's Decision**

The ALJ's five-step sequential analysis concluded with a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 2021); *see* 20 C.F.R. § 404.1520. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured. (R. 2011). At Step Two, the ALJ found that Plaintiff had seizure disorder, migraine headaches, patellar maltracking disorder, and degenerative disc disease. (R. 2011). At Step Three, the ALJ found that none of Plaintiff's impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 2012–13).

Before proceeding to Step Four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except:

> she had to be able to sit for 5 minutes after an hour of standing/walking; could only occasionally climb ramps stairs but never climb ladders, ropes or scaffolds; could only frequently stoop, kneel, crouch or crawl and occasionally balance and frequently; could only frequently handle and finger; and could not be exposed to unprotected heights or hazardous machinery. Additionally, she could understand, remember and carry out simple instructions and make simple work decisions in a

7

routine work environment with few changes and can work for 2 hours before needing a break.

(R. 2013).

Based on the testimony of the VE from the prior proceeding, (R. 148–56), the ALJ found that Plaintiff could perform the jobs of an Addresser, Call Out Operator, and Telephone Quotation Clerk, and that a significant number of such jobs existed in the national economy. (R. 2020). Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 2021).

## II.     LEGAL STANDARD

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by "substantial evidence." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.

9

> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original, citations and footnote omitted).

Following review of the entire record on appeal from a denial of benefits, the court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016).

### III. DISCUSSION

On appeal, Plaintiff asserts that the ALJ's findings at Steps Four and Five were not supported by substantial evidence and that the ALJ did not provide a sufficient rationale for rejecting the opinions of Dr. Zangaladze, Dr. Kern, Dr. Cornejo, Dr. Sarmiento, Dr. Feiner-Escoto and the VE. For the following reasons, the Court finds that the ALJ's conclusions are supported by substantial medical evidence in the record and affirms the final decision of the Acting Commissioner.

### A. Step Four Evaluation: Residual Functional Capacity

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n. 1); *see also* 20 C.F.R. § 404.1545(a). Here, the ALJ found that Plaintiff had the RFC to perform sedentary work with several exceptions and was therefore not disabled. (R. 2013).

The Social Security Act defines work as "sedentary" when it—

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

The several exceptions identified by the ALJ included—

[Plaintiff] had to be able to sit for 5 minutes after an hour of standing/walking; could only occasionally climb ramps stairs but never climb ladders, ropes or scaffolds; could only frequently stoop, kneel, crouch or crawl and occasionally balance and frequently; could only frequently handle and finger; and could not be exposed to unprotected heights or hazardous machinery.

(R. 2013).

In determining an individual's RFC at Step Four, the ALJ must consider all relevant evidence—including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a)); *see* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; *Burnett*, 220 F.3d at 121. The ALJ's finding must "be accompanied by a clear and satisfactory explanation of the basis on which it rests," sufficient for the reviewing court to determine if the decision is supported by

substantial evidence. *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981). The ALJ, however, is not required "to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records." *Fargnoli*, 247 F.3d at 42. When presented with conflicting evidence, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993); *Plummer*, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.").

Plaintiff alleges two errors in the ALJ's determination of her RFC: (1) that the ALJ was unjustified in rejecting the opinions of Dr. Zangaladze and Dr. Kern outright and failed to recontact them; (2) that the ALJ erred in discounting the reports of examinations done after the date last insured by Dr. Cornejo, Dr. Sarmiento, and Dr. Feiner-Escoto. The Court finds neither argument persuasive and addresses each in turn.

1. <u>The ALJ Accorded Some Weight to Dr. Zangaladze's Opinions.</u>

Plaintiff first argues that the ALJ rejected Dr. Zangaladze's opinion outright without considering it and without first recontacting him as the treating physician despite having the obligation to do so. (Pla.'s Br., ECF No. 12 at 18).

First, as this Court has previously recognized, "recontacting a medical source is now discretionary." *Sheryl W. v. Comm'r of Soc. Sec.*, No. 19-19127, 2020 WL 7258623, at *7 (D.N.J. Dec. 10, 2020) (citing *Bryson v. Comm'r of Soc. Sec.*, 639 F. App'x 784, 787 n.8 (3d Cir. 2016)). Further, "[w]hen an ALJ does not express 'confusion' about a treating source statement, but, instead, concludes that it lacks proper support, there is no reason to recontact the physician." *Vargas v. Berryhill*, No. 16-02003, 2018 WL 1938312, at *7 (M.D. Pa. Mar. 13, 2018). Reviewing

the record, there is no evidence that the ALJ expressed confusion about Dr. Zangaladze's opinion. (R. 2016–17)

Plaintiff is also incorrect in suggesting that the ALJ failed to consider Dr. Zangaladze's opinion and rejected it outright. In fact, the ALJ accorded great weight to Dr. Zangaladze's findings regarding Plaintiff's inability to work at heights or near hazardous machinery. (R. 2016). The ALJ did not, however, accord such weight to other portions of Dr. Zangaladze's opinion, specifically those portions which are favorable to Plaintiff's claim. (R. 2016–17)

Reviewing the record, it is clear that the ALJ considered the remainder of Dr. Zangaladze's opinion and provided several reasons for assigning it little weight. First, the ALJ noted that there were inconsistencies between Dr. Zangaladze's opinion and Plaintiff's medical records. (R. 2016). While Dr. Zangaladze noted in his opinion that Plaintiff had "possible" focal seizures, there was evidence in his treating notes that suggested that he believed the source of the seizure activity might have been pseudoseizures. (R. 2016). The fact that he did not change the medication prescribed or prescribe new medication also supports this conclusion. (R. 2016).

Second, the ALJ pointed out that as a neurologist, Dr. Zangaladze was not qualified to opine on whether Plaintiff experienced pseudoseizures because such opinions "are evaluated under mental impairments, not the neurological listing" and therefore "outside of his area of practice." (R. 2017). Plaintiff raises—seemingly for the first time in her Reply—that Dr. Zangaladze is board-certified by the American Board of Psychiatry and Neurology, suggesting that this opinion *is* within his area of expertise. Setting aside that raising new facts and arguments in a reply brief is generally improper, *see, e.g.*, *Karlo v. Pittsburgh Glass Works, LLC*, 880 F. Supp. 2d 629, 641 (W.D. Pa. 2012), Dr. Zangaladze's certification does not establish that he is qualified to offer an opinion as a psychiatrist or psychologist because he is neither. The ALJ recognized that Dr.

13

Zangaladze received his board certification in neurology and clinical neurophysiology, not psychiatry, and Plaintiff cites no evidence to the contrary.

Finally, the ALJ noted that Dr. Zangaladze's opinion that Plaintiff will be absent from work four days a month was inconsistent with the fact that Plaintiff only experienced pseudoseizures once or twice a month. (R. 2017).

Therefore, contrary to Plaintiff's argument, the ALJ did not reject Dr. Zangaladze's opinion outright but instead considered it closely. The Court does not agree that the ALJ was "inserting her own medical expertise against that of a treating physician." (Pla.'s Br., ECF No. 12 at 18). Plaintiff fails to address the inherent contradictions that the ALJ found existed within Dr. Zangaladze's records and opinions, which are the precise reasons the ALJ assigned it less weight. For these reasons, Plaintiff's argument fails in this respect, and substantial evidence supports the ALJ's decision.

2. The ALJ Considered Dr. Kern's Opinions and Letters Adequately.

Plaintiff claims that the ALJ did not give adequate weight to the opinions and letters of Dr. Kern and failed to recontact her to clarify her report. (Pla.'s Br., ECF No. 12 at 19). Dr. Kern provided one opinion and two "To whom it may concern" letters dated November 2018, July 2020, and November 2020, respectively. (R. 1680–81, 3138, 3984–85).

In finding that a claimant has not carried out the burden of proving that her impairment matches or is equivalent to a listed impairment, the ALJ must provide additional reasoning other than a "bare conclusory statement that an impairment did not match, or is not equivalent to, a listed impairment." *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000)). That said, the ALJ only needs to offer a "sufficient explanation to provide meaningful review." *Jones*, 364 F.3d at 505.

In the instant case, the ALJ did just that. First, the ALJ considered Dr. Kern's November 2018 opinion and accorded great weight to the finding that Plaintiff cannot work with machinery due to seizure-related dangers. (R. 2016). However, the ALJ did not give weight to the remainder of Dr. Kern's opinion and explained that it was because (1) she is Plaintiff's primary care provider, and (2) there were "little, if any treatment notes to support her opinion prior to the date last insured." (R. 2017). Furthermore because the treatment note was made after the date last insured, the ALJ pointed out that it was impossible to "determine whether the opinion is based upon what occurred prior to September 2016 or after[;] the opinion does not acknowledge the periods of treatment it was considering." (R. 2017). Plaintiff claims that Dr. Kern has been treating Plaintiff for five years and had "extensive treatment records . . . back to 2013," (Pla.'s Br., ECF No. 12 at 19), but Plaintiff cites no such evidence in the record to substantiate this claim.

The ALJ also offered "sufficient explanation" for assigning little weight to Dr. Kern's July 2020 "To whom it may concern" letter. *Jones*, 364 F.3d at 505. The ALJ noted that, similar to her November 2018 opinion, Dr. Kern did not provide the timeframe that the July 2020 opinion addresses. (R. 2017). She also provided nothing but a brief statement that Plaintiff is "currently not working due to a disability that precludes her from working," (R. 3138), which in itself is a conclusory statement and opinion that the ALJ need not grant "any special significance." 20 C.F.R. § 404.1527(d)(3); *Dixon v. Comm'r of Soc. Sec.*, 183 F. App'x 248, 251 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance."). The ALJ did not accord this opinion any significance because it lacked any function-by-function analysis and thus did not qualify as a medical opinion under the regulations. *See Shane v. Berryhill*, No. 18-00284, 2019 WL 1099807, at *3 (W.D. Pa. Mar. 8, 2019). Plaintiff's argument again fails, and the ALJ's opinion in this regard is supported by substantial evidence.

### 3. The ALJ Considered Dr. Cornejo, Dr. Sarmiento and Dr. Feiner-Escoto's Opinions and Letters Adequately.

Plaintiff claims that the ALJ failed to appropriately consider the medical opinions of Drs. Cornejo, Sarmiento, and Feiner-Escoto. This Court disagrees. As the matter stands, and considering the medical opinions Plaintiff provided, the ALJ was justified in assigning less weight to the doctors' medical opinions because they are all dated after Plaintiff's date-last-insured. *See, e.g.*, *Scouten v. Comm'r Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) ("The ALJ was entitled to consider the complete medical record and to place greater reliance on the contemporaneous entries than on the doctor's later, inconsistent opinion."); *Brandau v. Berryhill*, No. 17-01411, 2018 WL 6733874, at *9 (E.D. Pa. Sept. 4, 2018) ("[T]he ALJ did not err in considering the fact that [the physician's] opinion was rendered after Plaintiff's date last insured."). For Dr. Feiner-Escoto's, the ALJ noted that her opinions "are not relevant to the time period at issue" because she "started treating the claimant after the date last insured." (R. 2018). For Drs. Cornejo and Sarmiento, the ALJ noted that their opinions "fail to provide an accurate opinion regarding the claimant's residual functional capacity" because "their opinions were based on the examination of the claimant in 2018, well after her date last insured." (R. 2018).

Plaintiff also argues that the ALJ failed to appropriately consider the medical opinions of the doctors before discounting them, especially given that the previous ALJ ordered them, claiming that "[s]he could have recontacted those doctors to see if they believed their assessment would apply to earlier periods or she could have exercised her discretion and called a medical advisor to render an opinion as to onset date." (Pla.'s Br., ECF No. 12 at 22). As Plaintiff recognizes recontacting a medical source is discretionary. *Bryson*, 639 F. App'x 784 at 787 n.8. "Neither the claimant nor his or her representative can require an ALJ to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability." SSR 18-01p,

16

2018 WL4945639 (Oct. 2, 2018). Furthermore, "[i]n general, an individual has a statutory obligation to provide [the Social Security Administration] with the evidence to prove to [them] that he or she is disabled." *Id.*

For the foregoing reasons, this Court finds that there was substantial evidence justifying the ALJ's decision with respect to Plaintiff's residual functional capacity.

### B. Step Five Evaluation: Alternative Work

Plaintiff first argues that "if the residual functional capacity is not accurate, then any determination as to alternative work activity is invalid." (Pla.'s Br., ECF No. 12 at 23). Because this Court has already found that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence, this point is moot. However, Plaintiff argues separately that (1) the ALJ should not have considered prior VE testimony from the vacated ALJ decision at all and erred by not being clear about her intention to rely on said testimony; and (2) the ALJ erred by relying on evidence regarding jobs that are now obsolete. The Court disagrees and addresses each argument in turn.

#### 1. The Prior VE Testimony

The ALJ did not err by considering the testimony of a VE during a prior proceeding. It is true that "[o]n remand, the ALJ reviews evidence *de novo* and is therefore not required to consider the vocational testimony of a VE from a vacated prior decision." *Michele R. v. Kijakazi*, No. 20-15032, 2022 WL 1081035, at *6 (D.N.J. Apr. 11, 2022). However, there is no requirement *preventing* the ALJ from reviewing vocational testimony from a vacated prior decision. *See Connelly v. Colvin*, No. 15-03351, 2016 WL 6902353, at *8 (E.D. Pa. Oct. 26, 2016) (evaluating evidence from a prior ALJ hearing but reversing on other grounds).

The ALJ was clear about her intentions to rely upon prior testimony from the VE and brought it to the attention of Plaintiff's counsel during the hearing:

> Let's see, Counsel, I think we had from the prior case we had hypothetical testimony on a sedentary. If I wanted to use a less than sedentary, I don't think I need vocational expert testimony on that . . . . [I]s there a hypothetical that you want me to frame for the VE?
>
> . . . .
>
> [I]f I have a sedentary hypothetical already, I can do a less than sedentary for that. We don't need the hypothetical for that.

(R. 2066).

Plaintiff's claim that she was not put on notice that the prior testimony would be used is belied by the record and the failure of Plaintiff's counsel to object at the time. The questions posed by the ALJ to Plaintiff's counsel were clearly predicated upon the "sedentary hypothetical" posed in the prior VE testimony and would not make sense otherwise. (R. 2066). In any event, the ALJ offered Plaintiff's counsel another opportunity to seek clarification by explicitly asking Plaintiff's counsel if there was anything else he wanted to ask. (R. 2066). In response to the ALJ's question, Plaintiff's counsel only posed one question about work absences, and confirmed that that was the only question he would ask. (R. 2067). For these reasons, the Court finds that the ALJ's reliance on the prior testimony of a VE was proper and provides further substantial evidence supporting her conclusion at Step Five.

    2. <u>Jobs Cited by the ALJ</u>

Plaintiff finally argues that the ALJ erred in Step Five by citing jobs that are obsolete. The three jobs cited by the ALJ included "Addresser," "Call Out Operator," and "Telephone Quotation Clerk." (R. 2020). Plaintiff argues that these jobs are outdated because they were last updated in 1977 and do not exist in the manner described in the Dictionary of Occupational Titles ("DOT"). (Pla.'s Br., ECF No. 12 at 26). However, "the DOT remains an appropriate source of occupational

data. Under 20 C.F.R. § 404.1566(d)(1), the Social Security Administration may take administrative notice of job information from the DOT." *Devault v. Astrue*, No. 13-0155, 2014 WL 3565972, at *6 (W.D. Pa. July 18, 2014); *see also Jean-Pierre v. Comm'r of Soc. Sec.*, No. 16-5691, 2017 WL 4316880, at *8-9 (D.N.J. Sept. 28, 2017); *Smith v. Comm'r Soc. Sec.*, No. 19-20682, 2020 WL 7396355, at *7. (D.N.J. Dec. 17, 2020). The ALJ's reliance on the DOT is thus presumptively justified.

Even assuming that some of the DOT occupations cited are obsolete, not all of them are. Two of the jobs cited by the ALJ—Addresser and Call Out Operator—have clear analogs in today's economy that are not obsolete.[3] *See Feeley*, 2015 WL 3505512, at *11 ("That these DOT categories survive in the more modern O*Net compilation strongly suggests that they are not obsolete." (internal citations omitted)). Given these analogs, neither of these jobs can properly be described as obsolete. As such, the Court finds that the ALJ committed no error in relying on them (or the VE's opinion based on them) to form her conclusions at Step Five. The VE testified that there were 65,200 Addresser jobs and 34,350 Call Out Operator jobs in the national economy. (R. 2020). The VE's testimony about such data is "the kind of evidence—far 'more than a mere

---

[3] *Compare* DOT, § 209.587-010 (defining the responsibilities of an Addresser as "Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail") *with* NAT'L CTR. FOR O*NET DEV., O*NET ONLINE [hereinafter "O*NET"], No. 43-9022.00 (defining the responsibilities of a Typist as "Use typewriter or computer to type letters, reports, forms, or other straight copy material from rough draft, corrected copy, or voice recording. May perform other clerical duties as assigned") *and compare* DOT, § 237.367-014 (defining the responsibilities of a Call Out Operator as "Compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber") *with* O*NET, No. 43-4041.00 (defining the responsibilities of a Credit Checker as "Investigate history and credit standing of individuals or business establishments applying for credit. Telephone or write to credit departments of business and service establishments to obtain information about applicant's credit standing").

scintilla'—that a reasonable mind might accept as adequate to support' a finding about job availability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019). Therefore, either of these categories would constitute substantial evidence to support the ALJ's conclusion that a significant number of suitable jobs for Plaintiff exist in the national economy.

For all of these reasons the ALJ's determination at Step Five was supported by substantial evidence in the record and Plaintiff's challenges are unsuccessful.

## **CONCLUSION**

For the foregoing reasons, the Court affirms the final decision of the Acting Commissioner. An appropriate Order will be entered.

*[Signature]*

**CHRISTINE P. O'HEARN**
**United States District Judge**